IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| SENATOR AMANDA F. CHASE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:21-cv-00054-REP |
| | ) | |
| SENATE OF VIRGINIA by and through The | ) | |
| Honorable Justin Fairfax, Lt. Gov. of | ) | |
| Virginia and President of the Senate of | ) | |
| Virginia | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| The Honorable SUSAN CLARKE | ) | |
| SCHAAR, Principal Contact of the Virginia | ) | |
| Senate and Clerk of the Senate | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISMISS</u>**

Mark R. Herring
 *Attorney General*

Erin B. Ashwell
 *Chief Deputy Attorney General*

Samuel T. Towell
 *Deputy Attorney General*

Blaire H. O'Brien
 *Assistant Attorney General*

Toby J. Heytens
 *Solicitor General*

Michelle S. Kallen
Jessica Merry Samuels
 *Deputy Solicitors General*

Kendall T. Burchard
 *John Marshall Fellow*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7240 – Telephone
(804) 371-0200 – Facsimile
solicitorgeneral@oag.state.va.us

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION ............................................................................................................... 1

STATEMENT ..................................................................................................................... 1

LEGAL STANDARD.......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

   I.     This suit presents a nonjusticiable political question ........................................6

   II.    Both defendants are immune from this suit........................................................11

        A.   All of plaintiff's claims are barred by sovereign immunity ....................................12

        B.   Plaintiff's claims against the Clerk are also barred by absolute legislative immunity......................................................................................................15

            1.    Any suit against the senators themselves would have been barred by absolute legislative immunity........................................................ 15

            2.    Under the circumstances of this case, the Clerk is also protected by absolute legislative immunity ................................................................. 17

CONCLUSION.................................................................................................................. 20

CERTIFICATE OF SERVICE ........................................................................................... 22

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Allen v. Wright,*
   468 U.S. 737 (1984) ................................................................................................ 5, 9

*Antrican v. Odom,*
   290 F.3d 178 (4th Cir. 2002) .............................................................................. 13, 14

*Baker v. Carr,*
   369 U.S. 186 (1962) ............................................................................................. 9, 10

*Bogan v. Scott-Harris,*
   523 U.S. 44 (1998) .......................................................................................... 15, 16, 17

*Bragg v. West Virginia Coal Ass'n,*
   248 F.3d 275 (4th Cir. 2001) .................................................................................... 15

*Brodkorb v. Minnesota,*
   No. 12-1958, 2013 U.S. Dist. LEXIS 19416 (D. Minn. Feb. 13, 2013) ................... 13

*Brown v. Busch,*
   No. 4:13-CV-71 RM, 2013 U.S. Dist. LEXIS 168709 (N.D. Ind. Nov. 26, 2013).................. 13

*Cash v. Granville Cnty. Bd. of Educ.,*
   242 F.3d 219 (4th Cir. 2001) .................................................................................... 12

*Chapman v. Houston Welfare Rights Org.,*
   441 U.S. 600 (1979) ................................................................................................... 4

*Cunningham v. General Dynamics Info. Tech., Inc.,*
   888 F.3d 640 (4th Cir. 2018) ...................................................................................... 5

*DeBauche v. Trani,*
   191 F.3d 499 (4th Cir. 1999) .............................................................................. 13, 14

*Edelman v. Jordan,*
   415 U.S. 651 (1974) ................................................................................................. 12

*Ex parte Young,*
   209 U.S. 123 (1908) ....................................................................................... 13, 14, 15

*Gravel v. United States,*
   408 U.S. 606 (1972) ................................................................................................. 17

*Hall v. Virginia,*
   385 F.3d 421 (4th Cir. 2004) ...................................................................................... 2

*Hans v. Louisiana,*
   134 U.S. 1 (1890) ..................................................................................................... 12

*Hutto v. South Carolina Ret. Sys.,*
   773 F.3d 536 (4th Cir. 2014) ...................................................................................... 5

*Larsen v. Senate of the Commonwealth of Pa.*,
152 F.3d 240 (3d Cir. 1998) ...................................................................... 10, 11, 16

*Lewis v. Clarke*,
137 S. Ct. 1285 (2017) ...................................................................................... 12, 15

*Malley v. Briggs*,
475 U.S. 335 (1986) ................................................................................................ 15

*Marbury v. Madison*,
5 U.S. 137 (1803) ...................................................................................................... 6

*Metzenbaum v. Federal Energy Regulatory Comm'n*,
675 F.2d 1282 (D.C. Cir. 1982) ............................................................................ 8

*Minton v. St. Bernard Parish School Board*,
803 F.2d 129 (5th Cir. 1986) ................................................................................ 13

*Moore v. United States House of Representatives*,
733 F.2d 946 (D.C. Cir. 1984) .............................................................................. 9

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
429 U.S. 274 (1977) ............................................................................................... 13

*National Ass'n of Social Workers v. Harwood*,
69 F.3d 622 (1st Cir. 1995) .................................................................................. 19

*Nixon v. United States*,
506 U.S. 224 (1993) ................................................................................... 7, 8, 9, 10

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) .................................................................................................... 6

*Powell v. McCormack*,
395 U.S. 486 (1969) ............................................................................................. 9, 10

*Quern v. Jordan*,
440 U.S. 332 (1979) ............................................................................................... 13

*Rangel v. Boehner*,
20 F. Supp. 3d 148 (D.D.C. 2013) ................................................................. passim

*Rangel v. Boehner*,
785 F.3d 19 (D.C. Cir. 2015) ............................................................................... 18

*Red Wolf Coal. v. North Carolina Wildlife Res. Comm'n*,
No. 2:13-CV-60-BO, 2014 U.S. Dist. LEXIS 65601 (E.D.N.C. May 13, 2014) ...................... 5

*Republic of Paraguay v. Allen*,
134 F.3d 622 (4th Cir. 1998) ............................................................................... 14

*Richmond, Fredericksburg & Potomac, R.R. Co. v. United States*,
945 F.2d 765 (4th Cir. 1991) ................................................................................. 5

*Rucho v. Common Cause*,
139 S. Ct. 2484 (2019) ................................................................................. 6, 7, 11

*Supreme Court of Va. v. Consumers Union of the U.S.,*
   446 U.S. 719 (1980) .................................................................................. 16

*Taylor v. Kellogg Brown & Root Servs., Inc.,*
   658 F.3d 402 (4th Cir. 2011) ..................................................................... 4

*Tenney v. Brandhove,*
   341 U.S. 367 (1951) ...................................................................... 16, 17, 20

*United States v. Ballin,*
   144 U.S. 1 (1892) ..................................................................................... 7, 8

*Vieth v. Jubelirer,*
   541 U.S. 267 (2004) ...................................................................................... 7

*Virginia House of Delegates v. Bethune-Hill,*
   139 S. Ct. 1945 (2019) ................................................................................ 12

*Whitener v. McWatters,*
   112 F.3d 740 (4th Cir. 1997) .......................................................... 8, 16, 17

*Will v. Michigan Dep't of State Police,*
   491 U.S. 58 (1989) ...................................................................................... 12

*Wilson v. Houston Cmty. Coll. Sys.,*
   955 F.3d 490 (5th Cir. 2020) ...................................................................... 20

*Younger v. Harris,*
   401 U.S. 37 (1971) ........................................................................................ 1

**Statutes**

U.S. Const. amend. I ...................................................................... 4, 14, 17

U.S. Const. amend. XI ......................................................................... 13

U.S. Const. amend. XIV ......................................................................... 4

U.S. Const. art. I, § 5, cl. 2 ...................................................................... 8

U.S. Const. art. III ................................................................................... 5

Va. Const. art. IV § 1 .............................................................................. 12

Va. Const. art. IV § 11 .............................................................................. 2

Va. Const. art. IV, § 10 .......................................................................... 18

Va. Const. art. IV, § 11, ¶ 1(c) ................................................................. 2

Va. Const. art. IV, § 7 ................................................................... 4, 8, 10

Va. Const. art. IV, § 9 .............................................................................. 8

**Statutory Authorities**

42 USC § 1983 ............................................................... 4, 12, 13, 15

**Rules**

Fed. R. Civ. P. 12(b) ................................................................................. 2

Fed. R. Civ. P. 12(b)(1) ...................................................................... passim

Fed. R. Civ. P. 12(b)(6) .............................................................................. 1

Fed. R. Evid. 201(b)(2) ............................................................................... 2

Va. Senate R. 11(a) .................................................................................... 2

Va. Senate R. 18(h), ¶ 2 ........................................................................... 14

Va. Senate R. 28(a) .................................................................................... 2

Va. Senate R. 50 ........................................................................................ 3

Va. Senate R. 9 ........................................................................................ 18

**Bills and Resolutions**

S. Res. 91, 2021 Sess. (Va. 2021) ............................................... 2, 3, 4, 14

## INTRODUCTION

Plaintiff asks a federal court to second-guess and set aside a state legislative chamber's decision about whether and how to express disapproval of the conduct of one of its own members. Because it is difficult to imagine a starker violation of "Our Federalism," *Younger v. Harris*, 401 U.S. 37, 44 (1971), the Court should dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1). Specifically, the Court should hold that this case presents a nonjusticiable political question and that the two named defendants are immune from this suit.

## STATEMENT

1.      Plaintiff is a member of the Senate of Virginia. ECF No. 1, ¶ 1. On January 6, 2021, plaintiff participated in a rally that directly preceded an insurrection that "led to multiple deaths, including that of a United States Capitol Police officer; injured numerous others; desecrated the United States Capitol; resulted in property destruction; threatened the lives and safety of those who are entrusted with carrying out the will of the American people; and required an emergency response from 200 Virginia State Troopers and 1,300 members of the Virginia National Guard, who were put in harm's way to quell the violence and restore order." ECF No. 1-3, lines 50–55; see ECF No. 1, ¶ 11 (referencing "Plaintiff's involvement in a political rally on January 6, 2021"); ECF No. 9, p. 9 (inviting the Court to "view the censure similar to a FRCP 12(b)(6) motion" and "assume that everything in th[e] censure is true").

In the aftermath of the insurrection, plaintiff repeatedly voiced her support for those who stormed the Capitol, calling them "[p]atriots who love their country" and "propagating unfounded claims regarding the nature of the events, the identities of those who took part, and the validity of the presidential election." ECF No. 1-3, lines 43–44. Plaintiff also "declined" an opportunity "to specifically denounce and repudiate those individuals at the January 6 riot who (i) were proponents of white supremacy; (ii) wore T-shirts and other attire emblazoned with anti-

Semitic messaging; and (iii) breached the United States Capitol grounds barricades, broke into the Capitol when the United States Congress was in session, and disturbed and defaced the Capitol." *Id.* at lines 44–49.

2.       On January 13, 2021, ten of plaintiff's colleagues proposed a resolution "expressing the censure of the Senate against" plaintiff. ECF No. 1, ¶ 6.[1] The proposed resolution—Senate Resolution 91 (SR91)—was referred to the Privileges and Elections Committee, which reported it to the full Senate six days later. See ECF No. 1, ¶¶ 11, 13.[2]

Under Virginia practice, all bills and resolutions generally must be "read by [their] title . . . on three different calendar days." Va. Const. art. IV, § 11, ¶ 1(c).[3] The first reading of SR91 was on January 25, 2021, six days after it was reported out of committee. ECF No. 1, ¶¶ 14–15.[4] After a second reading on January 26, 2021, a senator proposed what plaintiff calls "a substitute censure," ECF No. 1, ¶ 16, but is actually labeled "floor amendment in the nature of a substitute." ECF No. 1-3, line 2; see Va. Senate R. 28(a) (specifically authorizing "resolution[s]" to be "recommitted *or amended*" after having been "twice read by title" (emphasis added)). In addition to the allegations arising from the January 6 insurrection, the proposed amendment

---

[1] See https://lis.virginia.gov/cgi-bin/legp604.exe?211+ful+SR91. Under Federal Rule of Evidence 201(b)(2), this Court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." That standard plainly includes a government-maintained website whose purpose is to provide a timely summary of proceedings of a state legislative chamber. And because the current motion is addressed to the Court's subject-matter jurisdiction, the Court "may consider material other than the accepted-as-true allegations of the complaint." *Rangel v. Boehner*, 20 F. Supp. 3d 148, 162 n.13 (D.D.C. 2013), aff'd, 785 F.3d 19 (D.C. Cir. 2015); see also *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (stating that courts may review and consider public records in the context of a motion under Rule 12(b) without converting it into a motion for summary judgment).

[2] See https://lis.virginia.gov/cgi-bin/legp604.exe?ses=211&typ=bil&val=sr91.

[3] Although the state constitutional requirement applies solely to "bill[s]" that are intended to "become a law," Va. Const. art. IV § 11, the Rules of the Senate of Virginia contemplate three readings of all "bill[s] or resolution[s]." Va. Senate R. 11(a); see also Va. Senate R. 28(a).

[4] See https://lis.virginia.gov/cgi-bin/legp604.exe?ses=211&typ=bil&val=sr91.

contained descriptions of additional incidents that have occurred throughout plaintiff's tenure as a senator. See ECF No. 1-3, p. 1. The Senate agreed to the proposed amendment that same day on a unanimous voice vote.[5]

The next day (January 27), the amended resolution was read again and engrossed.[6] The Senate agreed to dispense with the final reading by a vote of 38 to 1, with only plaintiff disagreeing.[7] A senator then made a point of parliamentary inquiry about whether SR91, as amended, "[wa]s properly before this body."[8] Although the chair initially ruled that the resolution was not properly before the Senate,[9] that conclusion was appealed to the full body,[10] which overturned the chair's ruling by a supermajority vote of 29 to 8. See ECF No. 1, ¶ 19 n.4; see also Va. Senate R. 50 (providing that any ruling by the presiding officer may be "appeal[ed] to the Senate"). Before the final vote, plaintiff gave a floor speech that ended by threatening to "escalate this matter" by commencing "a public fight in a court of law" unless the Senate

---

[5] See https://lis.virginia.gov/cgi-bin/legp604.exe?ses=211&typ=bil&val=sr91; see also https://virginia-senate.granicus.com/MediaPlayer.php?view_id=3&clip_id=3936 (timestamp 5:16:26) (reflecting acceptance of floor amendment by voice vote).

[6] See https://lis.virginia.gov/cgi-bin/legp604.exe?ses=211&typ=bil&val=sr91; see also https://virginia-senate.granicus.com/MediaPlayer.php?view_id=3&clip_id=3949 (timestamp 1:16:52).

[7] See https://virginia-senate.granicus.com/MediaPlayer.php?view_id=3&clip_id=3949 (timestamp 1:19:26).

[8] https://virginia-senate.granicus.com/MediaPlayer.php?view_id=3&clip_id=3949 (timestamp 2:49:23).

[9] See https://lis.virginia.gov/cgi-bin/legp604.exe?ses=211&typ=bil&val=sr91 ("01/27/21 Senate: Chair rules Resolution is not properly before Senate").

[10] See https://virginia-senate.granicus.com/MediaPlayer.php?view_id=3&clip_id=3949 (timestamp 2:51:30).

_

declined to censure her.[11] The resolution was then agreed to by a bipartisan vote of 24 to 9, with 6 abstentions.[12]

3.      Five days later, plaintiff filed suit in this Court against the Senate of Virginia and the Clerk of the Senate "in her official capacity." ECF No. 1, ¶¶ 2–3. Plaintiff requests "a declaratory judgment that" the censure "violated [her] First Amendment rights under the United States Constitution" and that she "did not engage in Disorderly Behavior pursuant to Article Four Section 7 of the Virginia Constitution." ECF No. 1, pp. 14–15.[13] Plaintiff also seeks "a temporary and permanent injunction" preventing the Clerk "from allowing the publication of SR91 in the official journal of the Virginia Senate" and requiring her "to expunge the Substitute Censure and the Original Censure from the Public record and the official journal of the Senate" and "reinstate the Plaintiff's seniority rank existing prior to the issuance of SR91." *Id.*[14]

## LEGAL STANDARD

As explained below, the Court should dismiss the complaint because it raises nonjusticiable political questions and because both defendants are immune from this suit. Each of these issues may be analyzed under the rubric of Federal Rule of Civil Procedure 12(b)(1). See, *e.g.*, *Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402 (4th Cir. 2011) (applying

---

[11] https://virginia-senate.granicus.com/MediaPlayer.php?view_id=3&clip_id=3949 (timestamp 3:21:13).

[12] https://lis.virginia.gov/cgi-bin/legp604.exe?211+vot+SV0151SR0091+SR0091.

[13] The body of the complaint also states that plaintiff "seeks a judicial declaration" that the defendants violated her rights under the Due Process and Equal Protection Clauses, as well as "42 USC §1983." See ECF No. 1, ¶¶ 35–39. But see *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979) ("[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything.").

[14] Plaintiff has recently filed another lawsuit against the Republican Party of Virginia seeking a judicial order dictating the manner in which the party will choose its 2021 gubernatorial nominee. See Pet. for Declaratory Judgment & Inj. Relief, *Chase v. Republican Party of Va.*, Case No. CL2 1000572-00 (Richmond City Cir. Ct.) (filed Feb. 9, 2021).

the political question doctrine under Rule 12(b)(1)); *Cunningham v. General Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) ("[A] court finding a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction."); *Red Wolf Coal. v. North Carolina Wildlife Res. Comm'n*, No. 2:13-CV-60-BO, 2014 U.S. Dist. LEXIS 65601 (E.D.N.C. May 13, 2014) (analyzing a claim of absolute legislative immunity under Rule 12(b)(1)). Although the burden of establishing the Court's jurisdiction generally rests with the plaintiff, see *Richmond, Fredericksburg & Potomac, R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991), a defendant bears the burden of proof with respect to a sovereign immunity defense, *Hutto v. South Carolina Ret. Sys.*, 773 F.3d 536, 542–43 (4th Cir. 2014).

## ARGUMENT

Plaintiff contends that "[t]he gravamen of this case is" whether "the Senate of Virginia violate[d] its own rules in issuing a censure against" her. ECF No. 9, p. 18. To be clear, the answer to that question is: It absolutely did not. To the contrary, the Senate acted entirely consistently with its own rules when considering and approving the resolution of censure.

But this Court need not—indeed, may not—reach the merits of plaintiff's claims because plaintiff is asking for things that federal courts simply do not do. As the Supreme Court has explained, "[a]ll of the doctrines that cluster about Article III—not only standing but mootness, ripeness, political question, and the like—relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government." *Allen v. Wright*, 468 U.S. 737, 750 (1984) (citation omitted).

Plaintiff's claims and requests for relief violate those "constitutional and prudential limits," *id.*, at nearly every turn. Plaintiff insists that "[t]he public . . . needs to be told by this

5

Court that the Senate of Virginia erred in overstepping its censure authority and failing to abide by its own rules." ECF No. 9, p. 11; see also *id.* at 21 (asserting that this Court should "provide appropriate legal guidance" about the meaning of the words "disorderly behavior" as used in the Virginia Constitution). But federal courts are not the proper forum for seeking "to reassure the public" or counteract "interpret[ations]" that may have arisen from matters that have "been widely reported in the media," *id.* at 12, and the Supreme Court has emphasized that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). And here the "intrusion," *id.*, would be all the greater still because plaintiff's request for this Court to—in effect—*censor* the Senate of Virginia's *censure* of one of its own members raises profound questions of separation of powers as well. See ECF No. 1, pp. 14–15 (asking this Court to prohibit the Clerk "from allowing the publication of SR91 in the official journal of the Virginia Senate" and requiring her "to expunge the Substitute Censure and the Original Censure from the Public record").

This Court should dismiss the complaint with prejudice on one (or both) of two grounds. First, the Court should hold that the political question doctrine bars this suit. Second, the Court should hold that both defendants are immune from suit by plaintiff.

## I.  **This suit presents a nonjusticiable political question**

It is, of course, "the province and duty of the judicial department to say what the law is." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2494 (2019) (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). At the same time, however, the Supreme Court has long held and repeatedly reaffirmed that federal courts must refrain from hearing certain matters "because the question is entrusted to one of the political branches or involves no judicially enforceable rights." *Vieth v.*

*Jubelirer*, 541 U.S. 267, 277 (2004). These "political questions" are "nonjusticiable—outside the courts' competence and therefore beyond the courts' jurisdiction." *Rucho*, 139 S. Ct. at 2494.

      1.     Federal courts have consistently concluded that challenges to the internal procedures of legislative chambers raise nonjusticiable political questions. In *Nixon v. United States*, 506 U.S. 224 (1993), for example, the Supreme Court held that a federal judge's challenge to the procedures used by the United States Senate in convicting him in an impeachment trial was nonjusticiable. The Court cited two key considerations: the Constitution's "textual commitment" of the trial of impeachments to the Senate and "the lack of finality and the difficulty of fashioning relief." *Id.* at 236. "[O]pening the door of judicial review to the procedures used by the Senate in trying impeachments," the Court cautioned, "would expose the political life of the country to months, or perhaps years, of chaos." *Id.* (internal quotation marks and citation omitted).[15]

      Whereas *Nixon* involved the impeachment of a federal judge, the United States District Court for the District of Columbia has squarely held that a member of Congress's attempt to challenge his censure by the House of Representatives presented a nonjusticiable political question. See *Rangel v. Boehner*, 20 F. Supp. 3d 148, 166–76 (D.D.C. 2013), aff'd 785 F.3d 19 (D.C. Cir. 2015). Similar to plaintiff's assertion in this case, Rangel argued that his censure was invalid because "complying with House Rules is a condition precedent to the constitutional imposition of internal House discipline." *Id.* at 167. The court rejected that argument. Citing the Supreme Court's 1892 decision in *United States v. Ballin*, 144 U.S. 1, 5 (1892), the court

---

[15] Plaintiff's heavy reliance on Justice Souter's solo opinion concurring only in the judgment is not well taken. See ECF No. 1, pp. 2–3 (mistakenly labeling Justice Souter's separate opinion a dissent); ECF No. 9, p. 20 (failing to identify the nature of Justice Souter's opinion). As Justice Souter acknowledged, his "analysis differ[ed] somewhat from the Court's," *Nixon*, 506 U.S. at 252, which is why he did not join the opinion of the Court that is actually controlling here.

emphasized the broad authority of legislative chambers to set their own internal rules and stated that "[n]ormally, judicial intervention in this context is only 'appropriate where rights of persons other than members of Congress are jeopardized by Congressional failure to follow its own procedures.'" *Rangel*, 20 F. Supp. 3d at 168 (quoting *Metzenbaum v. Federal Energy Regulatory Comm'n*, 675 F.2d 1282, 1287 (D.C. Cir. 1982)). Though emphasizing that a legislative chamber "may not, by enacting and enforcing its own rules of procedure, violate another constitutional provision or an individual's rights under the Constitution," the court explained that once it is established that the chamber is acting within "the zone of their discretion," a court may not entertain a claim about *how* that discretion was exercised. *Id.* at 169, 171. "If they have not acted outside of that zone," *Rangel* explained, a federal court "may not sit as an appellate tribunal, reviewing whether the House has properly disciplined a Member." *Id.* at 171.

Plaintiff seeks here what *Nixon, Ballin*, and *Rangel* teach that federal courts cannot provide: judicial review of the internal actions of a state legislature that were within its zone of discretion. The Fourth Circuit has specifically recognized that "a legislative body's discipline of one of its members is a core legislative act." *Whitener v. McWatters*, 112 F.3d 740, 741 (4th Cir. 1997). Just as the federal Constitution commits questions of member discipline exclusively to Congress, see U.S. Const. art. I, § 5, cl. 2, the Virginia Constitution jealously confines disciplinary authority over members of the General Assembly to each of its two chambers. Compare Va. Const. art. IV, § 9 (stating that members are generally "privileged from arrest during the sessions of their respective houses" and "shall not be questioned in any other place" about "any speech in debate in either house"), with Va. Const. art. IV, § 7 (stating that "[e]ach house . . . may punish [its members] for disorderly behavior, and, with the concurrence of two-thirds of its elected membership, may expel a member").

Beyond this clear "textual commitment," *Nixon*, 506 U.S. at 236, a federal court's decision to second-guess a state legislature's judgment about whether and how to internally discipline one of its own members would exhibit a profound "lack of . . . respect," *Baker v. Carr*, 369 U.S. 186, 217 (1962), by "an unelected, unrepresentative judiciary" for the internal governance decisions of the elected members of a branch of state government, *Allen*, 468 U.S. at 750. And, just as in *Nixon*, fashioning relief for plaintiff's requested harms could tax the judicial role well past its breaking point. May a federal court even order the clerk of a state legislative chamber not to record a resolution that passed the chamber? See *Rangel*, 20 F. Supp. 3d at 175 (emphasizing that any order "that the defendants somehow bring about the editing of the House's Journal to strike any reference to Rangel's censure would not only express a profound lack of disrespect for a coordinate branch but also could trigger a constitutional crisis"). May a federal court order the Senate of Virginia to pass another resolution removing the censure from its own journal? See *id.* ("This Court has the same ability to order the House to edit its own Journal as it does to order the House to discipline one of its Members or to promulgate a particular Rule—none."). May this Court direct the Clerk of the Senate to restore plaintiff's "seniority rank," ECF No. 1, p. 15, and does plaintiff even have a "judicially cognizable private interest" in such matters? *Moore v. United States House of Representatives*, 733 F.2d 946, 959 (D.C. Cir. 1984) (Scalia, J., concurring in result) ("In my view no officers of the United States, of whatever Branch, exercise their governmental powers as personal prerogatives in which they have a judicially cognizable private interest.").

2.     Plaintiff errs in suggesting that the Supreme Court's 1969 decision in *Powell v. McCormack*, 395 U.S. 486 (1969), establishes that this case does not raise a nonjusticiable political question. See ECF No. 9, pp. 15–16. To the contrary, that decision was specifically

discussed and distinguished in *Nixon* on grounds that are directly applicable here.

"The relevant issue in *Powell*," the *Nixon* Court explained, "was whether courts could review the House of Representatives' conclusion that Powell was 'unqualified' to sit as a Member because he had been accused of misappropriating public funds and abusing the process of the New York courts." *Nixon*, 506 U.S. at 236–37. Such review was permissible because—far from conferring upon the House the ability to decide for itself what it meant to be "qualified"— the text of the Constitution contained a "separate provision specifying the *only* qualifications which might be imposed for House membership." *Id.* at 237 (emphasis added). In contrast, here—as in *Nixon*—"there is no separate provision of the Constitution that could be defeated by allowing the Senate final authority to determine," *id.*, when and how it is appropriate to "punish [its members] for disorderly behavior." Va. Const. art. IV § 7; accord *Rangel*, 20 F. Supp. 3d at 173 (emphasizing that "unlike in *Powell*, . . . Rangel ha[d] not identified any constitutional provision expressly limiting the House's discretion to discipline him").

3.      Although plaintiff has not cited it, a 1998 decision by the Third Circuit concluded that a Pennsylvania state court judge's challenge to his conviction at an impeachment trial before the state senate did not present a nonjusticiable political question. See *Larsen v. Senate of the Commonwealth of Pa.*, 152 F.3d 240, 245–48 (3d Cir. 1998). That decision, of course, is not binding here. It is also fundamentally unhelpful to plaintiff because the Third Circuit did not disturb the district court's separate holding that the Senate itself had sovereign immunity, see *id.* at 246, and the court of appeals held that the individual Senators must be dismissed because of absolute legislative immunity. See *id.* at 248–254; Part II, *infra*.

In any event, more recent authority has severely undermined the predicate for *Larsen*'s political question holding. Relying on broad language in *Baker v. Carr* that "it is the relationship

between the judiciary and the coordinate branches of the Federal Government, and not the federal judiciary's relationship to the States, which gives rise to the 'political question,'" 369 U.S. at 210, the Third Circuit essentially concluded that the political question doctrine categorically does not apply when an instrumentality of state government is sued in federal court. See *Larsen*, 152 F.3d at 246–48.

As a threshold matter, it is more than a little strange to suggest that the profound separation of powers problems that arise whenever federal courts undertake to scrutinize the internal operations of any legislative chamber simply vanish when serious federalism concerns are added to the mix as well. And regardless of whether that may have been the prevailing understanding when *Larsen* was decided more than two decades ago, the Supreme Court has now specifically affirmed that the political question doctrine *can* apply when actions by state governments are alleged to violate even federal constitutional rights. See *Rucho*, 139 S. Ct. at 2491. If claims by individual voters that a generally applicable state law deprived them of their personal and federally protected right to vote presents a nonjusticiable political question, *id.*, at 2491, the same is all the more true where an elected state official asks a federal court to referee "a public fight"[16] about whether she was properly subject to purely internal discipline that did nothing to disturb her membership in the Senate itself.

## II.    Both defendants are immune from this suit

The complaint names two defendants: the Senate of Virginia and the Clerk of the Senate "in her official capacity." ECF No. 1, ¶¶ 2–3. Both are immune from this suit. Accordingly, the complaint should be dismissed for that reason as well.

---

[16] https://virginia-senate.granicus.com/MediaPlayer.php?view_id=3&clip_id=3949 (timestamp 3:21:13).

## A.    All of plaintiff's claims are barred by sovereign immunity

It is well-settled that "an unconsenting State is immune from suits brought in federal court by her own citizens." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citing, *inter alia*, *Hans v. Louisiana*, 134 U.S. 1 (1890)). This immunity is not limited to situations where a State itself is the named defendant. Rather "an arm or instrumentality of the State generally enjoys the same immunity as the sovereign itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017). And because "lawsuits brought against employees in their official capacity represent only another way of pleading an action against an entity of which an officer is an agent, . . . they may also be barred by sovereign immunity." *Id.* at 1290–91 (internal quotation marks and citation omitted).

1.    These principles bar plaintiff from suing the Senate of Virginia in federal court. The Senate is not simply an "instrumentality" of the Commonwealth of Virginia. *Lewis*, 137 S. Ct. at 1290. Rather, it is one of the constituent parts of the Commonwealth itself and plays a direct role in exercising the Commonwealth's fundamental sovereignty. See Va. Const. art. IV § 1 ("The legislative power of the Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and House of Delegates."); see also *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953 (2019) (describing the other chamber of the Virginia General Assembly as an "organ of government"). For that reason, there can be no serious question that the Senate of Virginia is an arm of the Commonwealth and thus may "partake of" the Commonwealth's sovereign immunity. *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 223 (4th Cir. 2001).

Nor does the fact that plaintiff has brought suit under 42 U.S.C. § 1983 change any of this. To the contrary, the Supreme Court has squarely held *both* that States and their instrumentalities are not "persons" who may be sued under Section 1983, see *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), *and* that the statute does not abrogate state

sovereign immunity in any event, see *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Accord *Brown v. Busch*, No. 4:13-CV-71 RM, 2013 U.S. Dist. LEXIS 168709, at *16–18 (N.D. Ind. Nov. 26, 2013) (Indiana Senate is not a "person" under Section 1983); *Brodkorb v. Minnesota*, No. 12-1958, 2013 U.S. Dist. LEXIS 19416, at *11–14 (D. Minn. Feb. 13, 2013) (Minnesota Senate is not a "person" under Section 1983). Accordingly, plaintiff's claims against the Senate of Virginia should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(1).[17]

2.      Sovereign immunity also bars plaintiff's particular claims against the Senate's Clerk in her official capacity. To be sure, federal courts have long recognized an "exception to Eleventh Amendment immunity" that "allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution." *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002) (citing *Ex parte Young*, 209 U.S. 123 (1908)). That "exception," however, does not apply here. And because plaintiff's "claim[s] against [the Clerk] in [her] official capacity do[] not fall within the *Ex parte Young* exception," sovereign immunity bars those claims as well. *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999).

a.      For one thing, "[t]he *Ex parte Young* exception . . . applies *only* when there is an ongoing violation of federal law that can be cured by prospective relief" whereas here "the alleged violation of federal law occurred entirely in the past." *DeBauche*, 191 F.3d at 505

---

[17] Plaintiff errs in asserting that the Fifth Circuit's decision in *Minton v. St. Bernard Parish School Board*, 803 F.2d 129 (5th Cir. 1986), holds that "the Senate of Virginia itself [is] a separate entity that is . . . not entitled to immunity for violation of the Plaintiff's constitutional rights." ECF No. 9, p. 20. As the name of the defendant makes clear, *Minton* involved a local school board—a type of entity that longstanding precedent makes clear *is not* protected by sovereign immunity and *is* amenable to suit under Section 1983. See *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81 (1977) (holding that because "a local school board . . . is more like a county or city than it is like an arm of the State," "it [is] not entitled to assert any Eleventh Amendment immunity from suit in the federal courts").

(emphasis added). Plaintiff seeks "a judicial declaration" that conduct in which she *already engaged* was protected by the Federal Constitution and not sanctionable under the Virginia Constitution, ECF No. 1, ¶¶ 33–34, and that actions the Senate of Virginia has *already taken* "violated" her federally protected rights, ECF No. 1, ¶¶ 35–38. See ECF No. 1, at 14 (requesting "a declaratory judgment that the Censure of Plaintiff violated Plaintiff's First Amendment rights").

It is true that the complaint also seeks three forms of prospective relief against the Clerk. See ECF No. 1, pp. 14–15. But plaintiff does not seek to halt an "ongoing *violation* of federal law," *DeBauche*, 191 F.3d at 505 (emphasis added), and the fact that plaintiff seeks "an injunctive or declaratory decree directed at [the Clerk] does not alter the inescapable fact that" the effect of her requested relief would not be to prevent any future legal violations but rather "to undo" an already "accomplished state action," *Republic of Paraguay v. Allen*, 134 F.3d 622, 628 (4th Cir. 1998). Indeed, each of the various forms of relief plaintiff requests against the Clerk are "quintessentially retrospective" because they seek to "void[ ]" her already completed censure by (quite literally) erasing it from the public record. *Id.*[18]

b.    But the sovereign immunity problems with plaintiff's claims against the Clerk do not end there. Because plaintiff candidly admits that "[t]he gravamen of" her argument is that "the Senate of Virginia violate[d] its own rules in issuing a censure against" her, ECF No. 9, p. 18, it is clear that plaintiff "seeks to enforce *State* law, not *federal* law." *Antrican*, 290 F.3d at 187. But such claims, the Fourth Circuit has confirmed, also fail to satisfy the *Ex parte Young*

---

[18] This includes plaintiff's request for the Court to order the Clerk to "reinstate the Plaintiff's seniority rank existing prior to the issuance of SR91." ECF No. 1, p. 15. Because the Senate's rules provide that loss of seniority is an immediate and automatic consequence of censure, see Va. Senate R. 18(h), ¶ 2, plaintiff cannot obtain such relief without overturning the already completed act of censure itself.

exception. See *id;* see also *Bragg v. West Virginia Coal Ass'n*, 248 F.3d 275, 296 (4th Cir. 2001) (rejecting effort to use *Ex parte Young* exception to compel "a State official to comply with the State's law").

**B.    Plaintiff's claims against the Clerk are also barred by absolute legislative immunity**

It is striking but unsurprising that plaintiff has not attempted to sue any of the 29 individual senators who she accuses of "intentionally and knowingly disregard[ing]" the Senate's "own rules and established procedures [for] issuing censures against an elected official." ECF No. 1, ¶ 27; see p. 3, *supra* (noting that the vote rejecting plaintiff's interpretation of the Senate's rules was 29 to 8). Had plaintiff attempted to sue the senators themselves, it would have been barred by absolute legislative immunity. And plaintiff's attempt to evade that problem by suing the Senate's Clerk fails because here the Clerk's only involvement was as "an agent," which means that the Clerk is likewise entitled to absolute legislative immunity. *Lewis*, 137 S. Ct. at 1291.

*1.     Any suit against the senators themselves would have been barred by absolute legislative immunity*

Although the text of Section 1983 "admits of no immunities," the Supreme Court has consistently interpreted the statute "in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Malley v. Briggs*, 475 U.S. 335, 339 (1986) (internal quotation marks and citation omitted). One of the most "well established" forms of immunity is that "federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). Unlike qualified immunity, absolute legislative immunity is not limited to cases involving a request for damages. Rather, the doctrine of absolute legislative immunity "is equally applicable to § 1983 actions seeking declaratory or injunctive relief." *Supreme Court of Va. v. Consumers Union of the U.S.,*

15

446 U.S. 719, 732 (1980). So long as the challenged action falls within "the sphere of legitimate legislative activity," absolute immunity applies. *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951).

The Senate's actions here fall comfortably within the range of "legitimate legislative activity." *Tenney*, 341 U.S. at 376. Indeed, the Fourth Circuit has emphasized that "the power to punish" their members "is the *primary* power by which legislative bodies preserve their institutional integrity without compromising the principle that citizens may choose their representatives." *Whitener*, 112 F.3d at 744 (internal quotation marks omitted; emphasis added). And because "legislative bodies are left to police their own members," it would, "[a]bsent truly exceptional circumstances, . . . be strange to hold that such self-policing is itself actionable in a court." *Whitener*, 112 F.3d at 744; accord *Larsen*, 152 F.3d at 251 (concluding that "when [state] legislators play the role they have been given in impeachment proceedings, they act within the sphere of legitimate legislative activity and within their legislative capacities").

Nor do plaintiff's assertions that her censure was "based on the expression of views on policy" or that the Senate "intentionally and knowingly disregard[ed] its own rules and established procedures," ECF No. 1, ¶¶ 26–27, remove this case from the ambit of absolute legislative immunity. Quite the contrary. As the Supreme Court has explained, "[t]he claim of an unworthy purpose does not destroy the privilege" because the doctrine of absolute immunity "would be of little value if [legislators] could be subjected to the costs and inconveniences and distractions of a trial upon a conclusion of the pleader." *Tenney*, 341 U.S. at 377. For that reason, "[w]hether an act is legislative turns on the nature of the act itself, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 45. Indeed, in *Tenney*, the Court held that the defendant "had acted in a legislative capacity even though he allegedly singled out the plaintiff for investigation in order 'to intimidate and silence plaintiff and deter and prevent him

16

from effectively exercising his constitutional rights.'" *Bogan*, 523 U.S. at 55 (quoting *Tenney*, 341 U.S. at 371).[19]

> 2.    *Under the circumstances of this case, the Clerk is also protected by absolute legislative immunity*

Plaintiff does not argue that her claims against the Clerk are severable from those she could have asserted against the individual senators who actually voted to censure her. See ECF No. 1, p. 1 & ¶¶ 23, 26–27 (discussing absolute legislative immunity); ECF No. 9, pp. 19–21 (same). In any event, such an argument would be without merit.

The Supreme Court has recognized that "it is literally impossible, in view of the complexities of the modern legislative process, . . . for Members of Congress to perform their legislative tasks without the help of aides and assistants." *Gravel v. United States*, 408 U.S. 606, 616 (1972). For that reason, courts have long recognized that the same immunity granted to legislators also extends to "aides . . . so critical to the Members' performance that they must be treated as [the Members'] alter egos." *Id.* at 616–17.

---

[19] Plaintiff insists that *Whitener* "left open the door that absolute immunity does have limitations" in the context of member discipline by stating that "[e]ven if, at some level, there is a judicially enforceable First Amendment constraint on a legislature's power to discipline one of its members, we certainly do not approach it in this case." ECF No. 9, p. 19 (quoting *Whitener*, 112 F.3d at 744). But *Whitener* makes clear that—even if such a door exists—it does not open the federal courthouse to every plaintiff who alleges violations of either the "First Amendment [or] procedural due process rights" because the plaintiff in Whitener alleged both of those things and the Fourth Circuit held his suit was barred by absolute legislative immunity. *Whitener*, 112 F.3d at 741. What is more, many of the things for which plaintiff was censured fall comfortably within the category of "uncivil behavior" and "personal invective or other offensive remarks," *id.* at 745 (citation omitted), that *Whitener* makes clear may be sanctioned without disturbing absolute legislative immunity. See, *e.g.*, ECF No. 1-3, lines 14, 17–18 (recounting that plaintiff "berated a Capitol Police officer," "addressed the officer profanely[,] and made offensive remarks regarding the Clerk of the Senate"); *id.* at lines 21–22, 24–25 (stating that plaintiff "used her social media page to recklessly identify the names and office contact information of colleagues," which "result[ed] in several legislators and aides receiving threats"); *id.* at lines 29, 31 (noting that plaintiff had described another Senator as being "not for all Virginians").

These principles bar plaintiff's suit against the Clerk of the Senate. In *Rangel*, for example, the district court specifically held that the Clerk of the United States House of Representatives was immune from suit by a Member who argued that his censure had been unlawful. 20 F. Supp. 3d at 180. The court emphasized that "[a]sking whether a Member would have been immune for the Clerk's actions here is a non sequitur" because "Rangel [did] not base his claims against the Clerk on *any* of her actions." *Id.*; see *Rangel v. Boehner*, 785 F.3d 19, 25 n.4 (D.C. Cir. 2015) (noting Rangel's acknowledgement that the Clerk "committed no wrongdoing"). "But even assuming that the action complained of is recording the censure in the House Journal," the court continued, "the Clerk [was] entitled to immunity" because "maintenance of the Journal is a matter which the Constitution places within the jurisdiction of either House" and "the Clerk was acting by virtue of an express delegation of authority as [an] aide[] or assistant[] of Congress when she recorded Rangel's censure in the House Journal." *Rangel*, 20 F. Supp. 3d at 180 (internal quotation marks and citation omitted).

So too here. As in *Rangel*, plaintiff's claims against the Clerk are not based "on *any* of [the Clerk's] actions," 20 F. Supp. 3d at 180, and plaintiff does not accuse the Clerk of any "wrongdoing," 785 F.3d at 25 n.4. Indeed, the Clerk is barely mentioned in the complaint until the prayer for relief and only "as the principal contact of the Virginia Senate" who "maintains an official public record journal of proceedings of the Senate of Virginia." ECF No. 1, ¶ 3. And, here, as in *Rangel*, the Virginia Constitution places the responsibility of keeping a journal "within the jurisdiction of either House," *Rangel*, 20 F. Supp. 3d at 180; see Va. Const. art. IV, § 10 ("Each house shall keep a journal of its proceedings . . ."), and the Clerk operates under an "express delegation of authority" when she fulfills her "duty to enter the day's business in the Journal," *Rangel,* 20 F. Supp. 3d at 180. See Va. Senate R. 9 ("The Journal of the Senate shall be

daily drawn up by the Clerk of the Senate" and "shall be printed under the supervision of the Clerk of the Senate and delivered to the Senators without delay.").

The First Circuit's decision in *National Association of Social Workers v. Harwood*, 69 F.3d 622 (1st Cir. 1995) (*Harwood*), confirms that the same analysis applies to state legislative chambers. In *Harwood*, plaintiffs challenged a state legislature's ban on "lobbyists and lobbying from the floor of the House while the House is in session." *Id.* at 625. Seeking to avoid absolute legislative immunity, the plaintiffs sued "the House's head doorkeeper." *Id.* at 624. The First Circuit rejected that effort, emphasizing that "[w]here, as here, a legislative body adopts a rule, not invidiously discriminatory on its face . . . that bears upon its conduct of frankly legislative business, we think that the doctrine of legislative immunity must protect . . . legislative aides who do no more than carry out the will of the body by enforcing the rule as part of their official duties." *Id.* at 631. The court specifically declined to exclude the doorkeeper from the protection of this rule, noting that his "actions in keeping the House floor unsullied were performed by virtue of an express delegation of authority to him as part of the House's staff support apparatus, under the auspices of the Speaker and the legislative body as a whole." *Id.* at 631 n.10.

All of that is true of the Clerk here because the actions plaintiff seeks to restrain could not be more integral to the underlying legislative act. As a body, the Senate speaks only through its votes on particular bills or resolutions. And, in the case of censure, the vote and its resulting recording in the Journal are the very legislative act itself because *the entire point* of such a resolution is to express publicly the view of the legislative body about a particular matter. In asking this Court to forbid the Clerk from recording the Senate's approval of the resolution of censure—and to require the Clerk to restore the seniority that plaintiff automatically lost as a direct consequence of that censure—plaintiff is thus seeking to overturn the very act of censure

itself. Accord ECF No. 9, p. 2 (confirming that plaintiff is "seek[ing] redress from censure issued against her by the Senate of Virginia").[20]

*      *      *

Plaintiff complains that, absent this litigation, she has "no remedy" for her censure by the body of which she is a member. ECF No. 1, ¶ 30. Because censure is fundamentally a political proceeding conducted by a legislative body, plaintiff's remedy for any alleged wrongs must be a political one rather than "a public fight in a court of law."[21] As the Supreme Court explained in a similar suit alleging legislative malfeasance, "[s]elf-discipline and the voters must be the ultimate reliance for discouraging or correcting [any] abuses." *Tenney*, 341 U.S. at 378.

## CONCLUSION

The complaint should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(1).

---

[20] The Fifth Circuit's decision in *Wilson v. Houston Community College System*, 955 F.3d 490 (5th Cir. 2020), see ECF No. 1, ¶ 27 n.9, does not help plaintiff. As the Fifth Circuit explained, the defendant in that case was "a public community college district," *Wilson*, 955 F.3d at 493, and thus possessed neither sovereign immunity nor absolute legislative immunity from suit. See *id.* at 500 (noting that "absolute legislative immunity is a doctrine[] that protect[s] individuals acting within the bounds of their official duties, not the governing bodies on which they serve") (internal quotation marks and citation omitted).

[21] https://virginia-senate.granicus.com/MediaPlayer.php?view_id=3&clip_id=3949 (timestamp 3:21:13).

Respectfully submitted,


By:   _/s/ Toby J. Heytens_____

Mark R. Herring                                      Toby J. Heytens
  *Attorney General*                                    *Solicitor General*

Erin B. Ashwell                                      Michelle S. Kallen
  *Chief Deputy Attorney General*                    Jessica Merry Samuels
                                                        *Deputy Solicitors General*
Samuel T. Towell
  *Deputy Attorney General*                          Kendall T. Burchard
                                                        *John Marshall Fellow*
Blaire H. O'Brien
  *Assistant Attorney General*                       Office of the Attorney General
                                                     202 North Ninth Street
                                                     Richmond, Virginia 23219
                                                     (804) 786-7240 – Telephone
                                                     (804) 371-0200 – Facsimile
                                                     solicitorgeneral@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2021, a true and accurate copy of this paper was filed electronically with the Court's CM/ECF system, which will then send a notification of such filing to the parties.

*/s/ Toby J. Heytens*
Toby J. Heytens